F. L. KRAEMER & CO., GENERAL MOTORS CORP., TRUCK & COACH DIVISION *v.* UNITED STATES (No. 4883)[1]

United States Court of Customs and Patent Appeals, January 9, 1957

*Sharretts, Paley & Carter* (*Howard C. Carter* and *Richard F. Weeks* of counsel) for appellants.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel), for the United States.

[Oral argument December 6, 1956, by Mr. Carter and Mr. Welsh]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

RICH, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, C. D. 1772, overruling all claims in the protest.

The imported merchandise consists of channels composed wholly of aluminum, produced by an extrusion process, fabricated for use, in lengths of 11 feet 2 inches and 10 feet 7¾ inches.

The merchandise was classified as a manufacture of metal, not specially provided for, and assessed at 22½% ad valorem under paragraph 397 of the Tariff Act of 1930, as amended by T. D. 51802. Appellant claims that the merchandise is properly dutiable at 7½% ad valorem under paragraph 312, as modified by the Torquay Protocol to the

---

[1] C. A. D. 635.

General Agreement on Tariff and Trade, T. D. 52739, as channels, fabricated for use.

The paragraphs under consideration, as modified, are:

Par. 397. Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, \* \* \* aluminum, \* \* \*:

\* \* \* \* \* \* \*

Other \* \* \* _____ 22½% ad val.

Par. 312. Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel,

\* \* \* \* \* \* \*

machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting_____ 7½% ad val.

Appellants' main arguments are:

(1) That the provision for channels in paragraph 312 is an *eo nomine* designation, without limitation, and includes all forms of the article.

(2) That the omission from the predecessor paragraph 178 of the tariff act of 1883, in writing paragraph 137 of the tariff act of 1890, of the prefatory words "Iron or steel" before "beams, girders, joists," etc., evidences a legislative intent that the remaining "iron or steel" modify only *"other* structural shapes" in the rewritten paragraph, rather than the structural shapes specifically named, including channels.

Appellants' brief succinctly states the issue before us to be whether the words "iron or steel" in paragraph 312 modify "channels," conceding that if they do the classification was proper.

The lower court, in dealing with the first above contention of appellants, said:

Plaintiffs, by their brief, contend that the provision for "channels" in said paragraph 312 is "an *eo nomine* statutory designation of an article without limitations or a shown contrary legislation intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation will include all forms of said article." Citing *Nootka Packing Co. et al.* v. *United States,* 22 C. C. P. A. (Customs) 464, T. D. 47464.

Based upon the foregoing premise, plaintiffs then argue as follows: "Thus the aluminum channels at bar are dutiable under the *eo nomine* designation if that designation is without limitation (in the absence of (1)—proof of commercial designation and (2)—a shown contrary legislative intent, judicial or administrative practice)." Further, plaintiffs state: "There is no proof of a contrary commercial designation and our research has not disclosed anything to indicate a contrary legislative intent nor a contrary judicial decision or administrative practice."

Plaintiffs also invoke the familiar rule of legal construction that a qualifying clause modifies only its immediate antecedent where no contrary intention appears.

It is our considered opinion, however, that a contrary intention does appear, and a careful reading of the paragraph leads us to the conclusion that the words "iron or steel" qualify not only "other structural shapes," but each of the exemplar items enumerated in the paragraph. The words "all other structural shapes" clearly imply that the items specifically enumerated in the paragraph are also structural shapes; and sound reason would dictate that, if "all other structural shapes" are limited to those composed of iron or steel, it would be illogical to hold that the other items in the paragraph may be made of any kind of metal, woods, or synthetics. For instance, upon the theory of plaintiffs, the paragraph would include beams, joists, and posts, if composed wholly of wood.

### The lower court in dealing with the second above contention of appellants said:

Another argument advanced by plaintiffs, that the shapes which are specifically named are not limited by the words "iron or steel," flows from the fact that the appellate court has held that the rule of *ejusdem generis* does not apply in the determination of the scope of the paragraph.

However, we are not impressed by that argument, and it will be observed that our appellate court in the case of *United States* v. *The Winkler-Koch Engineering Co.*, 41 C. C. P. A. (Customs) 121, C. A. D. 540, stated (at page 134) with reference to the steel angles there involved:

\* \* \* Conceding, without holding, that the casings here involved are not *ejusdem generis* with "beams, girders, joists, angles, channels, car-truck channels, tees, columns, and posts, or parts or sections of columns and posts, and deck and bulb beams," all of which are embraced with the term "structural shapes", we may not overlook the fact that Congress realized that there were and are "other structural shapes" *of iron and steel* and that it made provision for them. \* \* \* [Italics supplied.]

It is noteworthy that earlier statutes in *pari materia* as far back as paragraph 137 of the Tariff Act of 1890 are substantially verbatim with the pertinent text of paragraph 312, with which we are here concerned. Moreover, as further support for the conclusion that the words "iron or steel" are not only applicable to the provision for "all other structural shapes" but also in the various precedent articles specifically enumerated in the paragraph, attention is directed to the comparable provision in the Tariff Act of 1883 which reads:

592. [sic, evidently 178] *Iron or steel* beams, girders, joists, angles, channels, car-truck channels, TT, columns and posts, or parts or sections of columns and posts, deck and bulb beams, and building forms, together with all other structural shapes of *iron or steel*, one and one-fourth of one cent per pound. [Italics supplied.]

The Customs Court then said that it considered the deletion of the initial "Iron or steel" was merely to avoid a repetition of words and to simplify the language and did not connote a change of meaning. We agree with this conclusion and with the lower court's reasoning.

Appellant further argues that Congress was aware of the growing importance of aluminum when it rewrote the tariff act in 1890, and that "it is reasonable to suppose that Congress intended channels extruded from aluminum to be classified in the same category with steel channels." We find this reasoning unconvincing [1] and unrealistic.

---

[1] In the book "Alcoa, An American Enterprise," by Charles C. Carr, Rinehart & Co., copr. 1951, it says at page 130:

The practice of extruding aluminum into useful shapes was introduced early in the century. [The twentieth century.] Here again Alcoa had to pioneer by buying an extrusion press in 1905 and hiring Louis de Cazenove, a relative of the DuPonts, to operate the machine. After some years of painful

Appellants' brief frankly admits, "We cannot definitely point to a demonstrable reason for this change in 1890." Simply because Congress may have been aware that a new industry was increasing in importance is insufficient reason for this court to find an intent to put aluminum channels in the same category with iron and steel channels in 1890.

Appellant attempts to distinguish the present case from *Kuyper & Co.* v. *United States*, 7 Ct. Cust. Appls. 212, T. D. 36509 relied on by the lower court, arguing that that case dealt only with the meaning of "steel" in the clause "other structural shapes of iron or steel," and had nothing to do with the composition of the structural shapes designated by name. In that case it was held that structural shapes of a nickel alloy steel were not to be dutiable as simply "steel" since there was a specific provision in the act to cover such alloy steels, and that to hold otherwise would bring about the anomaly that a steel bar alloyed with nickel would be dutiable at one rate whereas if the same bar were made into a "structural shape" it would be dutiable at a lower rate. Exactly the same anomalous situation is presented here. If the aluminum were in the form of bars it would be dutiable at 22½% under paragraph 397, whereas if it were made into a structural shape, a channel admittedly being a structural shape, then it would be dutiable at 7½% under paragraph 312. This is clearly the anomaly which would result if we were to construe the statute as appellant desires. Such a construction would amount to "Judicial legislation."

Finding no error in the decision of the lower court, it is *affirmed*.

WORLEY, J., concurs in the conclusion.

JACKSON, J., Retired, recalled to participate in place of COLE, J., absent because of illness.

O'CONNELL, J., was present at the argument of this case but, because of illness, did not participate in the decision.

experimentation, aluminum shapes produced by the extrusion method with hydraulic presses became a commercial product of the New Kensington mills.

\*     \*     \*     \*     \*     \*     \*

The fabrication of shapes or large sections such as channels came along in substantial fashion in 1930 when the Company built a large mill for this purpose.

Further light is shed on the economics of the aluminum industry as of 1890 by the statements, page 110, that prices per pound were $2 to $3 in 1889, $1.50 in 1891 and $.75 in 1893. At page 119 it is related that in 1884 a small cast aluminum pyramid weighing 100 ounces (6.25 lbs.) and costing $225 for the metal and manufacture was mounted on the tip of the Washington monument.

